20-1607 United States of America versus Sirshun Dontrell Burris. Oral argument not to exceed 15 minutes per side. Mr. Tableman for the defendant appellate. Good afternoon. If it pleases the court, my name is Kenneth Tableman. I'm appearing here on behalf of Mr. Sirshun Burris on this direct criminal appeal. This case is a sufficiency of evidence appeal. There are three counts involved and the facts are somewhat interrelated. But suffice it to say, there was a jury trial here. The defendant pled not guilty. And to start, there was a charge of conspiracy, a charge of distribution on a specific date, and a charge of possession with intent to distribute on another date. In this case, starting with the conspiracy charge, Mr. Burris submits that there was not sufficient proof of any agreement between him and his alleged co-conspirator, Mr. Davis. The pattern of investigation in this case was that an officer, an undercover officer, would call a specific phone number. Mr. Davis initially met with him and provided him with drugs. He called the number again. Mr. Davis came again. He called the number again. Mr. Davis came again. And on the next transaction, the October 8th transaction, which forms the basis for one of the charges, he alleged that Mr. Burris showed up and sold him drugs. Mr. Burris allegedly came in a pickup truck, and the registration of that truck traced back to Mr. Burris. There was another transaction involving Mr. Davis, and then a final transaction on the same day as the final transaction. There was the execution of a search warrant at the residence in Benton Harbor. Officers there saw Mr. Burris running from the back door of the residence and claimed that in the vicinity of a fence that he jumped over, they found nearly 10 ounces of methamphetamine. When Mr. Burris was finally arrested in this case, on the 23rd, in his left pocket was a and in his right pocket, and he was wearing sweatpants, was a handgun. No one said that they saw him running with the package of methamphetamine that was found on the fence line. What's significant about the proofs in this case is that there's no evidence, no direct evidence of a conspiratorial agreement between Mr. Davis and Mr. Burris. There's no text messages, there's no conversations, there's no finding of the two men together, none of that type of evidence. The only evidence that connects, potentially connects Mr. Burris would be this common phone number, and I would submit that it's just not enough to prove the agreement. What was the agreement? What do we know about the use of this phone number? Whose phone number was it? We don't know any of those questions, and Mr. Burris respectfully submits that's the conspiracy charge that required the jury to pile an inference on top of an inference to come up with the idea that there was some agreement. Well, except that after Burris appeared on the, say, the third time, on the other subsequent three times, they kept seeing Davis was observed going in and out of the house to get more drugs. Well, they did see Davis going to the house and returning at times with drugs, but what do we know about Mr. Davis? Do we know anything about Mr. Davis's relationship to Mr. Burris in the house? Was he living there? Were they occupying separate rooms? Did Mr. Burris know that Mr. Davis had drugs? And even if Mr. Burris knew that Mr. Davis was retrieving drugs from his home, even if he approved of that, what's the agreement? What's the conspiracy? The court has held in other cases that where persons know that each other may be selling drugs or possessing drugs, there still has to be an agreement between them. And what's the agreement? How do we come to an agreement? Well, could there be an agreement to engage in the sale of drugs? What would be the activities that they've engaged in show circumstantial evidence? Well, I mean, circumstantial evidence could be enough. Facet agreement could be enough. You have to look at what the people actually did, and you have to start with some type of ongoing agreed behavior. So the inferences, I guess, that's being urged here is that because Davis is seen in the vicinity of Burris's house, in connection with some drug transactions, that Burris must join that in some fashion. And what is it that Burris has done that shows that he joins that? Why is it just as consistent with the idea that, all right, this person that I know is doing drugs or selling drugs, I'm not going to stop them. I might even approve of it. But what's the agreement? What is your best case that you found that has comparable circumstances that held the evidence was insufficient? Well, I like the Gibbs case, for example, which was the short north posse, I think, in Columbus, Ohio, where you had a number of people that knew each other, associated with each other, admitted that they possessed and sold drugs, sold drugs in the same vicinity, from time to time, bought drugs to and from each other. But there was no showing that they had entered into a conspiracy. In that case, the conspiracy was alleging that this group was excluding all other dealers from their territory. There's no showing that they had joined that. So I thought that was a pretty good case. Assuming that we problem that your client did not move for a judgment of acquittal? Well, it appears to me under the court's current precedent, that we're stuck with a higher standard of proof, but I still think it would amount to plain error. Sufficiency of the evidence implicates the due process clause, the fundamental value that we have in our justice system that we're not going to take away someone's liberty unless the government has proven them guilty of every element of the crime charge. And I would submit that if the court would agree with me on a conspiracy charge, that that would satisfy the plain error standard review. Tell me this, would we as a panel be able to do anything about that, even if we agreed with your position, or would it have to require an en banc hearing of this court? Well, I tried to argue my reply brief, and I do argue my reply brief, that if you read Jackson v. Virginia, it can be read to eliminate this devoid of any evidence rule or miscarriage of justice rule that existed before Jackson v. Virginia. Yeah, but Jackson v. Virginia was 1979, and we've had subsequent Sixth Circuit cases that say it's still the miscarriage of justice devoid of evidence standard. So we can't overrule a prior panel, can we? But I suppose the question is whether those prior panels actually considered whether or not both Jackson v. Virginia and Olano, which sets up the plain error standard, whether those two cases were ever considered by a panel explicitly on the situation where someone fails to move for judgment of acquittal but is challenging the sufficiency of the evidence afterwards. Are there any cases that you know of that have explicitly addressed whether Olano and Jackson may have changed this devoid of evidence standard that we seem to have applied? Well, not in the Sixth Circuit, Your Honor. There's a dissent and an en banc decision in Delgado case that cited my brief that has a pretty extensive analysis of Jackson and Olano and how that may defeat the devoid of evidence and miscarriage of justice rule. And we don't have any panel decision that addresses Delgado? I don't. I'm not aware of any. Was Delgado a Fifth Circuit case? I don't know, Your Honor. I'd have to check. I think it was. I think it was. I think the majority actually said that the miscarriage of justice standard was still OK in the Fifth Circuit, didn't it? Yes. Yes, they did. The dissent has a very extensive analysis and highlights the circuit split. And I think, of course, I'm going to promote the sense for you. I think it is well taken. Thank you. I see my time is up, and I'll wait for counsel's argument. Thank you. Thank you, Mr. Tableman. Is Sheckmire? Thank you. Good afternoon, Your Honors. Renee Sheckmire on behalf of the government. In this case, the government is arguing that the Sixth Circuit law is clear that the standard here is the miscarriage of justice. And that is because the defendant not only did not make a Rule 29 motion, but actually did so after the district court expressly advised him or asked him, do you want to make a Rule 29 motion? At that time, he said, at this point, I do not. And that's on page 903 of the second volume of the trial transcript. So we have a clear waiver in this case. Somebody didn't forget to do it. They didn't do it intentionally. Now, in this case, the defendant is arguing. What on earth, if I may ask, and I know I'm asking you to speculate, but what on earth could a defense lawyer's reason for not moving for judgment of acquittal be? Your Honor, I have seen this happen before. And if the defense counsel believes that the evidence is there, sometimes they don't move for the Rule 29. As attorneys, you and I may sit back and say, why wouldn't you just move for it as a general sense so that you preserve an issue? But I've seen people not do it. I can't get into this defense counsel's head and explain why he did it in this case. But it was brought to his attention by the District Court, and he expressly did not want to raise it at that time. Is that, do you consider that, is that a waiver? Even if Mr. Tegelman has a good argument that, hey, it's too bad in this case versus waiver? Well, I've had other cases on different issues where there is, there is a distinction between what is a waiver and what is a forfeiture. Sometimes in the cases, it's not really clear whether it's a waiver or a forfeiture. But to me, a waiver is a knowing and intentional waiver. You were asked specifically, do you want to raise the Rule 29 motion now? Defense counsel says no. That's not something that somebody just forgot. That's not something that I would consider something forfeit. In other words, just not raised. When you make a knowing and intentional waiver of a constitutional right, we accept waivers for all kinds of waivers of constitutional rights. And I don't see any reason why you shouldn't be able to waive any right, including the right of Rule 29, to make that at the end of a case. In this case, because they didn't make it, it does limit the standard of review before this And the reason is, is to let the district judge determine based on having just heard the same evidence that the jury heard, whether or not the district judge believes there was proof beyond a reasonable doubt that a rational juror could find that. By denying the district judge that opportunity to review what he has just sat and listened to, you're now bringing a cold record before an appellate court and asking an appellate court to make the exact same ruling. And when the appellate court rules, the appellate court is looking at words on a piece of paper, whereas the district court is looking at the witnesses as they testify and is able to make the same types of analysis about how testimony came out before a jury that sometimes is not clear during reading a transcript on appeal. Wouldn't it be exactly the same situation if the motion is made and the district court says, I deny the Rule 29 motion, go ahead with the remainder of the case? Then the court appeals doesn't, in my hypo, if an acquittal motion is made and denied by the district judge with no explanation why he's denying it, wouldn't we be in exactly the same spot on appeal that we would have to be making a determination based on the cold record? Yes, we would. If there was no actual ruling, but that isn't. If there's a ruling, it's adverse. If there's an adverse ruling to the defendant with no explanation, we are still in the terrible situation you're describing that we have to be doing it on the cold record. Yes, you're absolutely correct. But in this case, even just looking at the cold record in this case, I believe that the evidence presented at trial does meet the elements of the offense. With respect to the distribution of methamphetamine, there was a direct basic hand-to-hand buy by the undercover police officer. He called the number and instead of Mr. Davis, it was Mr. Burris who came. That's direct evidence of Mr. Burris' guilt. And if the jury believed the police officer, there's really nothing more to say. With respect to the possession with intent to distribute, on that occasion, the defendant was, after a deal with Mr. Davis, Mr. Davis went to the defendant's house and he didn't go inside and didn't go anywhere but the front yard because the police came to execute a search warrant. The police observed Mr. Burris running outside of the house through the backyard and jumping over a fence and then he was arrested a couple blocks later. When they saw him running through the backyard, he had what one of the officers called his left hand up in a football carry. His left hand was up against his chest and his right hand was in his right pocket. He was wearing sweatpants. And they could see his right hand and where it was but because of the way that they were angled coming around the back of the house, they couldn't see his left hand. But when he paused at the fence and he eventually got over the fence, they then went to the fence and saw that in his line of fight there at the fence was a black leather bag that was open. It was a zippered bag and it was open and inside that was a closed plastic bag of methamphetamine. In this case, because of his flight, because the methamphetamine was in his flight path, because of the way the officer saw him running from the house, there is evidence that the defendant did possess methamphetamine on October 23rd with the intent to distribute it. And because there was a stipulation in this case that it was 275.6 grams of methamphetamine and that was far too much for personal use quantity, the intent to distribute is also established. So the hard one is the conspiracy, which is the claim that your opponent has focused on. Exactly, and I will go there next. So in the final of the three counts that he's challenging, the conspiracy count, this is fairly simple fact pattern. The detective was calling the same phone number and during the course of this case, he called it six different times and did different deals. On the first two deals, excuse me, Mr. Davis showed up and he did the transactions with the undercover police officer. On the third deal, which was October 8th, after calling the same number, it was instead Mr. Burrs who showed up. Excuse me. For the fourth, fifth and sixth deal, it was again, Mr. Davis. I need a moment to get some water. You can do that. Thank you. I'm very sorry. No problem. I'm sorry. You're on the fourth, fifth and sixth. So on the fourth, fifth and sixth time, Mr. Davis again showed up. The pressure is getting to me here. If you need another break, go ahead. If you don't mind, I'd rather get- No, if you need to drink some water into where you are, that would help. I don't need it. My wife would say you need a lozenger. I guess it's one of the advantages of Zoom. Yes. Retreat to where some water or something is. Exactly. No, Elijah, but I think I'm ready to go now. Okay. We've paused the time. You may proceed. Thank you. Okay. So during the fourth and fifth deals, Mr. Burris, excuse me, Mr. Davis was observed leaving from Mr. Burris' house immediately before the transaction and returning there immediately after. And in the middle of the October 22nd deal, which was the fifth deal, Mr. Davis had to go back to the Burris residence in the middle of the transaction when the undercover police officer asked for more methamphetamine during the middle of the deal. And the officers observed him going to Burris' house about five minutes later, coming back right to the undercover officer and doing the second part of the transaction. So given that Mr. Davis comes and goes from Mr. Burris' house, including on October 22nd when he went to get additional methamphetamine, that second part of the deal, that only one number is called and either Mr. Davis or Mr. Burris show up. And then at the time of the execution of the search warrant, which was after the October 23rd deal, it was Mr. Burris who ran from the house. Mr. Davis did not run from the house. Mr. Davis didn't even get into the house. He got only to the front yard where the police arrested him. So when Mr. Burris ran out the backyard and over the fence and a couple blocks away, it was Mr. Burris' flight path that was where the methamphetamine was shown. But why isn't all of this completely consistent with them just being two independent drug dealers as opposed to being in a conspiracy? Well, the primary evidence of the conspiracy is that they're only calling one phone number. If they, for example, if Mr. Burris were the source for Mr. Davis, then Mr. Burris would not be showing up for one of Mr. Burris or one of Mr. Davis' customers to do the deal himself. So that shows that there is some connection. But in addition to that, we have to remember that Mr. Burris himself testified in this case. And Mr. Burris stated under oath that nobody could come into his house, that Davis did not live there and he did not have a key. And if he wanted into the house, he would have had to been knocked and let into the house by Mr. Burris. Which means basically you would have to, the only inference here is that you would have to think that the drugs are being stored at Mr. Burris' house. And based on Mr. Burris' own testimony, if the drugs are being stored at his house, he is cooperating with Mr. Davis in the possession with intent to distribute and distribution of the drugs. And is cooperation enough for a conspiracy? It is because as long as he's doing it knowingly, in that he's knowingly joining the conspiracy, we don't have to have direct conversation between evidence of direct conversation. A conspiracy can be inferred from circumstantial evidence, which may reasonably interpreted as participation in a common plan. The fact that the evidence in this case was reasonably interpreted to mean that Mr. Burris had the drugs at his house and that's why Mr. Davis kept going there would indicate that there was on the plan. So it would be enough if hypothetically somebody allowed a drug dealer to keep drugs at somebody's house, that somebody would be a co-conspirator in my very short limited hypo? Happens all the time. Stash houses. People have stash houses where their only role in the conspiracy to store the drugs. And what is your best case, would you say, under similar circumstances where there's no explicit direct evidence of an agreement? Your Honor, I didn't look for that. I'm not ready. But I will tell you that there's a Sixth Circuit pattern jury instruction, which is number 14.05, which was read in this case and is read in all of our cases. And what it says is that the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other, to distribute or possess with intent to distribute methamphetamine. An agreement can be proven indirectly by facts and circumstances, which lead to a conclusion that an agreement existed. But it is up to the government to prove the facts and circumstances existed in this particular case. So the issue is, could a reasonable jury, based on these facts, conclude that a conspiracy existed? And I would state that although the government argues that the standard in this case is miscarriage of justice and void of evidence, in reality, the government would prevail on any of the standards, even if we used a plein air standard, as suggested by Mr. Tableman. The evidence here is sufficient because we're only looking at basically one reasonable inference. And it's not really for the court, I think, to second guess and choose an alternate, also reasonable inference. If it was reasonable inference for the jury to find, then that would meet the standard of whether any rational trier of fact could find the elements of the offense. It's beyond a reason. What about the Gibbs case? Beyond a reasonable doubt. Beyond a reasonable doubt. What about the Gibbs case that your opponent relies on? As I recall, in that case, if I'm recalling the right case, there were a number of different defendants in the Short North Posse, and some were found to be, there was enough evidence to show that they were participants in the conspiracy, and others there was not. I'm not prepared to go through each of the defendants in that case. I would indicate to the court that it is a fact-based driven analysis. And in this case, the government's facts, as I believe them, the most telling facts are the calling of only one number and having one of two different people show up to do the deal, which would indicate that they're either both using the same phone to distribute the methamphetamine, or that Mr. Davis, who normally has the phone, is directing Mr. Burris to distribute on that one occasion. I also think it's very relevant that Mr. Davis is seen coming and going from the Burris residence, and on the day of the search warrant, it's at the Burris residence where Mr. Burris flees out the back when the police are coming in front, and he's the one who has the large quantity of methamphetamine. The reasonable inference here is they are working in concert. If they were not working in concert, there would have been no reason for Mr. Burris to flee out the back door. There would have been no reason for Mr. Burris to show up on October 8th to distribute the drugs. These two things seem to me to be compelling and proof of the reasonable inference. Okay. Well, thank you, Ms. Sheckler. We appreciate your argument. Mr. Tableman, you have four minutes of rebuttal. Thank you very much, Your Honor. I think about other conspiracy cases that I've read about and participated in, and the government here was asking the jury and was asking the court to do a lot of guessing, and I almost think this is a case where you could have an instruction about missing evidence and drawing adverse inferences. Boy, there's a lot of cell phones in this case. Mr. Davis had three of them. My client had one in his pocket. No examination votes. In many, many cases, we see circumstances, and then we see communications between the participants in the conspiracy to support a conviction. That's not this case. As to the inference about the large quantity of methamphetamine found by the fence line, boy, I don't know how that ties into a conspiracy, and as I argue in my briefs, you could look at that testimony of the officers and look at the black bag and the gallon Ziploc bag that contained the 10 ounces of methamphetamine, and one officer is close enough to Mr. Burris to say he recognized him from prior contact, and yet he doesn't see him a pretty large bag with 10 ounces of drugs in a gallon Ziploc bag. The inference there is that's because he didn't have the bag, and it was equivocal testimony about whether he stopped at the fence or not. One officer said he did. One officer said he didn't. But these sound like jury questions. Those are jury questions. In any event, I would submit that you've got to show some kind of agreement before you start saying, well, we can make an inference that this or that happened, and agreements are usually shown by repeated communications or knowing presence at a scene or something like that, and I just don't think that was here, and I respectfully submit that at least as a conspiracy check out, the evidence was insufficient. What about Mr. Burris allowing Mr. Davis to store drugs in Burris' house? That seems to be the case if Davis goes there all the time to pick up the drugs to give to the informant. That's a tricky one because we know that Davis goes to from the house. I'm not so sure that it's clear that there would be an agreement to store drugs just because we look at Burris' testimony. After all, Mr. Burris is denying everything. The government has to prove their case, and a person can be a friend of somebody and stash something there, and the other person may not know about it or may know about it and say that's fine. I don't care. Do your thing, and I don't care, but I'm not part of it, and I'm not getting any cut of it or anything. In stash houses, there's usually consideration going back and forth between the people that are there, so again, I don't think that tips the scales in particular. Mr. Burris' fleeing when the police arrive is an adverse fact to your case, isn't it? If he was innocent, like you say, and knew nothing about what Mr. Davis had stored there, he wouldn't have fleed. Well, bear in mind, Mr. Burris, if I could finish my answer. Bear in mind, he's a convicted felon, and he's got a firearm in his pocket. He doesn't want to be around the police, that's for sure. Does that mean he's aware? Does that mean he's in agreement to distribute Thank you. Okay. Thank you, counsel, for your arguments this afternoon. We do appreciate them, and Mr. Tableman, thank you for taking this case under the Criminal Justice Act. It's a real service to your client and to our system at large, and we want to express our appreciation. Thank you very much for hearing us. Great. Thank you both. The case will be submitted. That completes our argument calendar for the afternoon. Mr. Ford, you may adjourn case. This honorable court is now adjourned.